### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHARLENE GALLAGHER,  ) | |
| ) | |
| Plaintiff,  ) | |
| ) | |
| v.  ) | CIVIL ACTION NO. 04-305J |
| ) | |
| JO ANNE B. BARNHART,  ) | JUDGE GIBSON |
| COMMISSIONER OF SOCIAL  ) | |
| SECURITY,  ) | |
| ) | |
| Defendant.  ) | |

## Memorandum Opinion and Order of Court

**GIBSON, J.**

This matter comes before the Court on the parties' cross-motions for summary judgment and the briefs in support thereof (Document Nos. 7-10).

This Court has jurisdiction in this case pursuant to 42 U.S.C. §§ 1383(c)(3) and 405(g). Charlene L. Gallagher (hereinafter "Plaintiff") initially applied for Supplemental Security Income (hereinafter "SSI") benefits on July 19, 2001, alleging disability as of September 30, 1998. R. p. 25. The state agency denied the application. On June 14, 2002, a hearing was held before Administrative Law Judge Melvin D. Benitz (hereinafter "ALJ"). R. pp. 25, 33. The Plaintiff, who was represented by counsel at that time, appeared and testified at the hearing. R. p. 25. Thomas R. Wyland, an impartial vocational expert, also testified. R. p. 25. In a decision dated July 19, 2002, the ALJ determined that the Plaintiff had the residual functional capacity to perform sedentary to light work activity with a sit/stand option, provided that such work was simple and routine, involving low levels of stress, concentration and memory, and required little interaction with co-workers or the public. R. p. 32. Based on that assessment, the ALJ determined that the Plaintiff was unable to perform her past relevant work as a farmhand, janitor, mail sorter, or quality control person. R. p. 32. Nevertheless, he determined that the Plaintiff could work as a shoe dyer/cleaner, mail sorter, coil winder, hand grinder,

1

deburrer, photo finisher, mechanical assembler, racker, hand packer, or small parts assembler. R. p. 33.[1] Mr. Wyland's testimony established that these jobs existed in significant numbers in the national economy. R. p. 31.

On November 22, 2002, the Plaintiff protectively filed another application for SSI benefits, alleging disability as of September 28, 1998, due to diabetes mellitus, hypertension, kidney problems, backaches, anxiety and depression. R. pp. 15-16. The claim was denied by the state agency on May 7, 2003. R. p. 15. The Plaintiff filed a request for a hearing on July 14, 2003. R. p. 42. It was determined that the Plaintiff had good cause for filing this request late. A hearing was held on March 29, 2004, before the same ALJ who had issued the decision of July 19, 2002. R. p. 193. The Plaintiff appeared and testified at the hearing, as did two additional witnesses. R. pp. 194-231. The Plaintiff was not represented by counsel on this occasion. R. p. 195. Irene Montgomery, an impartial vocational expert, was present for the hearing, but did not testify. R. p. 193. In a decision dated May 20, 2004, the ALJ concluded that the Plaintiff was not disabled for purposes of 42 U.S.C. § 1382c(a)(3)(A)-(B). R. p. 21. He found that there was no good cause for reopening his prior determination, treating it as "final and binding" for purposes of the instant case. R. p. 15. The ALJ further noted that the Plaintiff suffered from diabetes mellitus, depression, anxiety, post-traumatic stress disorder, hypertension and obesity. R. p. 16. The first four of these impairments were found to be severe under 20 C.F.R. § 416.920(a)(4)(ii), while the latter two were not. R. p. 16. Nevertheless, the ALJ concluded that the Plaintiff could "engage in a range of light work that involve[d] no more than simple, routine, repetitive tasks." R. p. 21. On the basis of that capacity assessment, that ALJ found that the Plaintiff could perform her past relevant work as a mail sorter, "both as she performed the job and as it [was] usually

---

[1] Although the mail sorter position that the Plaintiff once held was determined to be at the medium exertional level, there were apparently mail sorter positions existing in the national economy which were at the light exertional level. R. Pp. 31, 33. Otherwise, the ALJ's step five determination that the Plaintiff could work as a mail sorter would have been in direct conflict with his earlier step four conclusion that she could not return to her previous mail sorter job.

2

performed in the national economy."² R. p. 20.

On October 20, 2004, the Appeals Council denied the Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner. R. Pp. 3-5. The Plaintiff filed a complaint in this Court on December 13, 2004. The Commissioner of Social Security (hereinafter "Commissioner"), filed an answer on April 5, 2005. The Plaintiff and the Commissioner filed cross-motions for summary judgment on May 9, 2005, and June 6, 2005, respectively.

A district court's review of the administrative determinations of the Commissioner of Social Security is governed by the standard of whether the record contains substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842, 853 (1971). Substantial evidence is more than just a scintilla of evidence and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citations omitted); *see also, Stewart v. Secretary*, 714 F.2d 287 (3d Cir. 1983). In discussing this standard of review, the Third Circuit has stated:

> "This oft-cited language is not, however, a talismanic or self-executing formula for adjudication; rather, our decisions make clear that determination of the existence *vel non* of substantial evidence is not merely a quantitative exercise. A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence–particularly certain types of evidence (e.g., that offered by treating physicians)–or if it really constitutes not evidence but mere conclusion. See *id.* at 706 ("'Substantial evidence' can only be considered as supporting evidence in relationship to all the other evidence in the record.") (footnote omitted). The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."

*Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). *De novo* review of the facts is prohibited and deference must be given to the Commissioner's findings unless there is an absence of substantial

---

²The Plaintiff does not argue that principles of res judicata or collateral estoppel should have precluded this determination. Br. for Plaintiff pp. 1-15; *Dennard v. Secretary of Health and Human Services*, 907 F.2d 598 (6th Cir. 1990). Consequently, this issue is not before the Court.

3

evidence to support such findings in the record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191 (3d Cir. 1986); 42 U.S.C. § 405(g).

When resolving the issue of whether a claimant is disabled and therefore entitled to disability insurance benefits or SSI benefits, the Commissioner uses a five-step sequential evaluation process. The U.S. Supreme Court recently summarized this five-step process as follows:

> "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c)."

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 379-380, 157 L.Ed.2d 333, 339-340 (2003) (footnotes omitted).

In support of her motion for summary judgment, the Plaintiff asserts that the ALJ failed to exercise his "heightened duty of care" owed to her by virtue of the fact that she was not represented by counsel at the hearing. Br. for Plaintiff p. 6. Specifically, she contends that a remand is warranted because the ALJ did not obtain updated medical records documenting the treatment that she was receiving in 2004 and did not have the vocational expert, who was present at the hearing, give testimony. Br. for Plaintiff pp. 8-15.

Where the claimant is unrepresented at the hearing, "the ALJ has a duty to exercise a heightened level of care and assume a more active role." *Smith v. Harris*, 644 F.2d 985, 989 (3d Cir. 1981),

(internal quotation marks omitted). "Although the burden is upon the claimant to prove his disability, due regard for the beneficient purposes of the legislation requires that a more tolerant standard be used in this administrative proceeding than is applicable in a typical suit in a court of record where the adversary system prevails." *Hess v. Secretary of HEW*, 497 F.2d 837, 840 (3d Cir. 1974). In Social Security proceedings, "[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits[.]" *Simms v. Apfel*, 530 U.S. 103, 111, 120 S.Ct. 2085, 147 L.Ed.2d 80, 88 (2000) (plurality opinion).

As the Plaintiff concedes, "[l]ack of counsel is sufficient cause for remand only if supported by a showing of clear prejudice or unfairness at the administrative hearing." *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979). Nevertheless, the Plaintiff argues that she was prejudiced by the ALJ's failure to obtain additional medical evidence or to question the vocational expert. Br. for Plaintiff p. 14. This Court has the power, under 42 U.S.C. § 405(g), to remand the case "if it is clear that the lack of counsel prejudiced the claimant or that the administrative proceeding was marked by unfairness due to the lack of counsel[.]" *Livingston v. Califano*, 614 F.2d 342, 345 (3d Cir. 1980).

In support of her position regarding the ALJ's failure to obtain additional medical records, the Plaintiff relies on the decision of the U.S. Court of Appeals for the Third Circuit in *Reefer v. Barnhart*, 326 F.3d 376 (3d Cir. 2003). In *Reefer*, the Court of Appeals found that the ALJ had failed to develop the record to a satisfactory degree and had neglected to explain why he credited some evidence and discredited other evidence. *Reefer*, 326 F.3d at 380-382. With regard to the failure of the ALJ to adequately develop the record, the Court of Appeals was particularly troubled by the fact that the ALJ had made his decision without accessing medical records which were of the utmost importance to the claimant's case. *Id.* at 380-381. As was true in the instant case, the claimant in *Reefer* had appeared at the hearing before the ALJ on a *pro se* basis, without the benefit of counsel. *Id.* at 378. The Plaintiff contends that *Reefer* requires a reversal of the Commissioner's decision in this case. For the reasons that follow, however, the Court is convinced that *Reefer* is clearly distinguishable from the instant case.

The facts in this case differ meaningfully from those in *Reefer*. The first important difference deals with the Plaintiff's assertion that her case should be remanded because the ALJ failed to obtain

additional medical records. As the Commissioner points out, the Plaintiff "does not indicate what additional evidence may exist, and does not proffer to the Court what that evidence would show." Br. for Defendant p. 11. The current record contains only the medical evidence that was before the ALJ. R. p. 2. There is nothing in the record which indicates that the Plaintiff attempted to submit these additional medical records to the Appeals Council. R. p. 8. One month after the Plaintiff secured counsel, her attorney was informed that more evidence could be submitted and that the Appeals Council, awaiting the possibility of such evidence, would refrain from taking action in the Plaintiff's case for a period of twenty-five days. R. p. 6. The Appeals Council denied the Plaintiff's request for review two months later. R. p. 3. Similarly, when the Plaintiff commenced her action in this Court, she failed to submit the very medical records that she blames the ALJ for not obtaining.

In *Reefer*, the claimant submitted the relevant medical records to both the district court and the Court of Appeals. *Reefer*, 326 F.3d at 378. In *Matthews v. Apfel*, 239 F.3d 589 (3d Cir. 2001), the Court of Appeals construed the sixth sentence[3] of 42 U.S.C. § 405(g) to mean that, where the claimant introduces evidence in the district court which was not put before the ALJ, the District Court may remand the case "only if the evidence is new and material and if there was good cause why it was not previously presented to the ALJ[.]" *Matthews*, 239 F.3d at 593. Under *Matthews*, "evidence that was not before the ALJ cannot be used to argue that the ALJ's decision was not supported by substantial evidence." *Id.* at 594. Nevertheless, in *Reefer*, the new medical evidence was considered not for the purpose of determining whether the Commissioner's findings of fact were supported by substantial evidence, but rather for the purpose of determining whether the claimant had been prejudiced by the ALJ's failure to obtain the evidence while the administrative proceedings were still underway. *Reefer*,

---

[3]The sixth sentence of 42 U.S.C. § 405(g) states as follows: "The court may, on motion of the Commissioner of Social Security made for good cause shown before the Commissioner files the Commissioner's answer, remand the case to the Commissioner of Social Security for further action by the Commissioner of Social Security, and it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Commissioner of Social Security shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm the Commissioner's findings of fact or the Commissioner's decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and, in any case in which the Commissioner has not made a decision fully favorable to the individual, a transcript of the additional record and testimony upon which the Commissioner's action in modifying or affirming was based."

326 F.3d at 378, n. 2, 380-381. Since there were other reasons for remanding the case, it was unnecessary for the Court of Appeals to reach the question of whether the claimant had demonstrated "good cause" for not introducing the additional records at the administrative level. *Id.* at 381, n. 3.

Given the fact that the Appeals Council denied the Plaintiff's request for review, the decision under review in this Court is the decision of the ALJ. *Eads v. Secretary of DHHS*, 983 F.2d 815, 817 (7th Cir. 1993). The Appeals Council never "made a decision on the merits, based on all the evidence before it[.]" *Eads*, 983 F.2d at 817. Therefore, the failure of the Plaintiff to present the additional medical evidence to the Appeals Council may be inconsequential from a legal standpoint. The Plaintiff challenges the decision of the ALJ directly, and does not purport to independently contest the Appeals Council's denial of her request for review. *Mills v. Apfel*, 244 F.3d 1, 5 (1st Cir. 2001). As noted earlier, the Plaintiff was no longer unrepresented when she filed her request for review with the Appeals Council. R. pp. 3-11. If the records of which the Plaintiff speaks were so critical to her case, her failure to submit them to the Appeals Council, *after she had obtained counsel*, is inexplicable.

In any event, it is unnecessary for this Court to determine whether the Plaintiff's failure to submit these records to the Appeals Council carried with it any legal consequences, or whether her position would otherwise be bolstered by the U.S. Supreme Court's determination in *Sims v. Apfel*, 530 U.S. 103, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000), (plurality opinion), that "[c]laimants who exhaust administrative remedies need not also exhaust issues in a request for review by the Appeals Council in order to preserve judicial review of those issues." *Sims*, 530 U.S. at 112. Even if her failure to present the more recent medical records to the Appeals Council can be overlooked, her failure to submit them to this Court is fatal to her argument. The claimant in *Reefer* submitted the new documents when she commenced her action against the Commissioner, while the Plaintiff in the instant case has not done so. *Reefer*, 326 F.3d at 378. The claimant in *Reefer* used the new evidence in her case to demonstrate that she had been prejudiced by the ALJ's failure to obtain that evidence. *Id.* at 379-381. Without revealing the contents of the documents at issue, the Plaintiff in this case cannot show that she has been

7

prejudiced as a result of the ALJ's failure to obtain them.[4] This case is distinguishable from *Reefer* in other ways as well. In *Reefer*, the claimant had experienced two strokes. *Id.* at 378. One of these strokes had occurred subsequent to the hearing, but before the issuance of the ALJ's decision. *Id.* at 378. Even though the claimant testified at the hearing that she had suffered an earlier stroke, the ALJ proceeded to make his decision without looking at the documentation of that stroke. *Id.* at 378. The Court of Appeals was concerned that the ALJ had failed to follow up on the claimant's testimony about her first stroke, given the fact that it was extremely important to the disability determination. The Court of Appeals explained that, "[u]pon finding that the medical records before him did not refer to this stroke, the ALJ had a duty to investigate further." *Id.* at 380. In contrast, the instant case does not involve a situation in which the ALJ was put on notice of the existence of medical reports critically related to the Plaintiff's case. Although the Plaintiff testified that she was seeking treatment for migraines, she also testified that her CAT scan and MRI had yielded normal findings. R. p. 208. Unlike the ALJ in *Reefer*, the ALJ in this case had no reason to believe that the outstanding medical records contained evidence of a statutory disability. In addition, *Reefer* involved a situation in which the claimant had already been receiving benefits and then later received a notice of disability cessation. *Id.* at 377-378. Consequently, that case was governed by the "medical improvement" standard established by 42 U.S.C. § 423(f)(1). The fact that the claimant had suffered two strokes seriously undermined the Commissioner's argument that the claimant's medical condition had improved enough to enable her to engage in substantial gainful activity. The Plaintiff in the instant case has never established the onset of disability in the first instance. In fact, the Plaintiff failed to establish that she was disabled at an earlier administrative proceeding. R. pp. 22-33.

---

[4]The Court acknowledges that a specific offer of proof is not required in order for the Court to remand the case to the Commissioner on the ground that the ALJ has failed to adequately develop the record. *Jozefick v. Shalala*, 854 F.Supp. 342, 349 (M.D. Pa. 1994). Nevertheless, in order to obtain a remand, the Plaintiff must still show that she has been prejudiced by the fact that she was unrepresented at the hearing. *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979). Without showing what the documents contain, the Plaintiff cannot demonstrate how she has been prejudiced by the ALJ's failure to obtain them. In *Reefer*, the Court of Appeals considered the documents themselves as a part of its evaluation, albeit for the limited purpose of determining whether the claimant had been prejudiced at the administrative level. *Reefer*, 326 F.3d at 378, n. 2, 380-381. Furthermore, the Court of Appeals did not decide whether the ALJ's failure to obtain the records, without more, provided a basis for a remand, since it was clear that a remand was required for other reasons. *Id.* at 381.

8

This case is likewise distinguishable from *Dobrowolsky v. Califano*, 606 F.2d 403 (3d Cir. 1979), *Livingston v. Califano*, 614 F.2d 342 (3d Cir. 1980), and *Smith v. Harris*, 644 F.2d 985 (3d Cir. 1981). In both *Dobrowolsky* and *Livingston*, the Court of Appeals determined that the ALJ had failed to explore the very likely possibility that the claimant was suffering from an impairment listed in 20 C.F.R. Regulation No. 4, Subpt. P, App. 1. *Dobrowolsky*, 606 F.2d at 407-408; *Livingston*, 614 F.2d at 345-346. The Plaintiff in the instant case does not argue that her impairments meet or medically equal a listed impairment. In *Smith*, the claimant did not even attend the hearing, and the ALJ "considered the case de novo without any oral testimony." *Smith*, 644 F.2d at 988. The claimant did not appear because of medical problems, and the Court of Appeals determined that the circumstances of that case imposed on the ALJ an unusually heightened duty to obtain evidence from third parties in the claimant's absence. *Id.* at 988-989. The Plaintiff in this case certainly cannot claim that her hearing was comparable to that reviewed by the Court of Appeals in *Smith*. "In the absence of a showing of clear prejudice or unfairness at the agency level proceedings, the lack of counsel is not a sufficient cause for remand." *Domozik v. Cohen*, 413 F.2d 5, 9 (3d Cir. 1969).

The Plaintiff's second argument is also based on the premise that the ALJ failed to exercise his "heightened duty of care" to the Plaintiff. Nevertheless, the underlying issue in her second argument is different than that in her first. She contends that the ALJ erred in failing to question the vocational expert who was present at the hearing. Br. for Plaintiff pp. 9-15. The Commissioner contends that vocational expert testimony was not required because this case was resolved at the fourth step of the sequential evaluation process. Br. for Defendant p. 11. The Plaintiff also objects to the ALJ's purported reliance on the grids in 20 C.F.R. Regulation No. 4, Subpt. P, App. 2, insisting that resort to the grids is inappropriate where the claimant suffers from both exertional and nonexertional impairments. Br. for Plaintiff pp. 11-13.

In *Musgrave v. Sullivan*, 966 F.2d 1371 (10th Cir. 1992), the U.S. Court of Appeals for the Tenth Circuit explained that an ALJ is under no obligation to elicit the testimony of a vocational expert at the fourth step of the sequential evaluation process because, at that point, the burden has not yet shifted to the Commissioner. *Musgrave*, 966 F.2d at 1376. The U.S. District Court for the District of Delaware,

9

in *Rivera v. Barnhart*, 239 F.Supp.2d 413 (D. Del. 2002), elaborated further on this principle. The District Court explained that, "[w]here there is other sufficient evidence to support the [ALJ's] conclusion that a claimant is able to perform past relevant work, the testimony of a vocational expert is not needed." *Rivera*, 239 F.Supp.2d at 420. After all, it is the ALJ, and not the vocational expert, who is charged with the duty to determine the claimant's residual functional capacity. 20 C.F.R. § 416.946(c). As the District Court noted, "[v]ocational experts are not consulted for their medical expertise and are not charged with determining a Plaintiff's RFC based on the medical evidence in the record." *Id.* at 420. Finally, the District Court opined that "[u]se of the [Dictionary of Occupational Titles], and vocational expert testimony about the DOT, is not required where the [ALJ] determines that the claimant could return to his or her past work as he or she actually performed it." *Id.* at 421.

In the instant case, the ALJ relied on both the Plaintiff's own admissions and the DOT in order to determine that she retained "the ability to perform her past relevant work, both as she performed the job and as it [was] usually performed in the national economy." R. p. 20. He relied specifically on the Plaintiff's written admission that the heaviest weight that she had been required to lift when she worked as a mail sorter was ten pounds. R. pp. 20, 96. It is clear that the ALJ relied on this statement by the Plaintiff to determine that she was capable of working as a mail sorter as she actually performed that job. The written statement completed by the Plaintiff was consistent with her testimony at the hearing, since she testified that the trays that she had been required to lift "were probably about 10 pounds." R. p. 203. The ALJ relied on the DOT to conclude that the Plaintiff was capable of performing her past relevant work as it was usually performed in the national economy. This determination, however, was not essential to the ALJ's decision, given that he had already concluded that the Plaintiff could perform her past relevant work as she had actually performed it. R. p. 20.

The Plaintiff also takes issue with the ALJ's purported reliance on the grids in 20 C.F.R. Regulation No. 4, Subpt. P, App.2, in order to find that the Plaintiff was not statutorily disabled. Br. for Plaintiff p. 12. Although the ALJ mentioned the grids in his opinion, they were not mentioned in his findings. R. pp. 20-21. Therefore, it appears as though the grids were not viewed by the ALJ to be dispositive in this case. Furthermore, in *Crane v. Shalala*, 76 F.3d 251 (9th Cir. 1996), the U.S. Court

10

of Appeals for the Ninth Circuit determined that an alleged error in the ALJ's application of the medical-vocational guidelines was negated by the fact that the case had been resolved at the fourth step of the analysis. *Crane*, 76 F.3d at 255. The Plaintiff concedes that vocational expert testimony was not required at the fourth step of the process. Br. for Plaintiff p. 14.

The introduction to 20 C.F.R. Regulation No. 4, Subpt. P, App. 2, states as follows: "The following rules reflect the major functional and vocational patterns which are encountered in cases which cannot be evaluated on medical considerations alone, where an individual with a severe medically determinable physical or mental impairment(s) is not engaging in substantial gainful activity and the individual's impairment(s) *prevents the performance of his or her vocationally relevant past work.*" 20 C.F.R. Regulation No. 4, Subpt. P, App. 2, (emphasis added). Consequently, it is clear that the grids apply only at the fifth step of the sequential evaluation process. Under these circumstances, where the case was obviously resolved at the fourth step of the process, any alleged errors in the application of the grids were not outcome determinative. The fifth step of the analysis is only reached where the claimant is incapable of performing his or her past relevant work. 20 C.F.R. § 416.920(a)(2)(4).

In support of her position, the Plaintiff relies on *Santise v. Schweiker*, 676 F.2d 925 (3d Cir. 1982), *Burnam v. Schweiker*, 682 F.2d 456 (3d Cir. 1982), and *Washington Heckler*, 756 F.2d 959 (3d Cir. 1985). In *Santise*, the Court of Appeals upheld the use of the grids, and this determination was later vindicated by the U.S. Supreme Court's decision in *Heckler v. Campbell*, 461 U.S. 458, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983). *Santise* provides no direct support for the Plaintiff's position. It is true that the Court of Appeals declared in *Santise* that "the grids do not govern–and indeed were not intended to govern–all disability cases." *Santise*, 676 F.2d at 934. As noted earlier, however, the grids were not dispositive in the instant case. In *Burnam*, the ALJ "erred in treating [the claimant's] exertional and nonexertional impairments separately and in then determining on the basis of the medical-vocational grid that substantial gainful work existed in the national economy that [the claimant] could perform." *Burnam*, 682 F.2d at 458. *Burnam* is inapplicable where, as here, the existence of jobs in the national economy is irrelevant. Similarly, in *Washington*, the ALJ determined that the claimant was incapable

11

of returning to his former occupation. *Washington*, 756 F.2d at 964. Since the ALJ in the instant case found that the Plaintiff could return to work as a mail sorter, *Washington* does not help the Plaintiff's argument.

The Plaintiff has certainly demonstrated that she was somewhat disadvantaged by the fact that she proceeded on a *pro se* basis. Nevertheless, "although the ALJ has a duty to fully explore the facts, the ALJ does not act as counsel for the claimant." *Musgrave v. Sullivan*, 966 F.2d 1371, 1377 (10th Cir. 1992). The Plaintiff has not shown that she was prejudiced by her failure to secure counsel, and she has expressly conceded that her waiver of the right to counsel was knowing and voluntary. Br. for Plaintiff pp. 7-8. The issue of the voluntariness of her waiver is not presently before the Court. With regard to the ALJ's decision to allow only two of the Plaintiff's witnesses to testify, the record clearly establishes that this decision was made after one of the witnesses informed the ALJ that they would testify only if their testimony was needed and that their testimony would be "approximately" the same. R. pp. 196-197. The exclusion of cumulative testimony is not unusual in the legal system. *Tran v. Toyota Motor Corporation*, 420 F.3d 1310, 1315 (11th Cir. 2005).

While the Plaintiff has failed to show that she was prejudiced by the fact that she was unrepresented at the hearing, the question of whether the Commissioner's decision denying the Plaintiff's application for benefits is supported by substantial evidence remains to be answered. On the basis of the current record, it is clear that the Commissioner's decision is supported by substantial evidence.

The most compelling medical documentation of the Plaintiff's ability to engage in substantial gainful activity is a March 13, 2003, report completed by a treating physician at Altoona Family Physicians. R. p. 176. The Plaintiff apparently wanted the physician to complete paperwork related to her disability claim, but the physician informed her that she did not meet the disability criteria and that she was "perfectly capable of having a job." R. p. 176. The ALJ relied on this report when he issued his decision. R. p. 19. As the Court of Appeals explained in *Fargnoli v. Massanari*, 247 F.3d 34 (3d Cir. 2001), "more weight is given to a claimant's treating physician[s] because these sources are likely to be the medical professionals most able to provide a detailed, longitudal picture of [the

claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." *Fargnoli*, 247 F.3d at 43.

On March 31, 2003, Dr. Doo Whan Cho performed a psychiatric evaluation of the Plaintiff. R. pp. 144-147. Dr. Cho determined that the Plaintiff had a global assessment of functioning (GAF) level of 55, that she had shown no evidence of a thought disorder, that she had "intellectual insight into the nature of her problems," and that she was capable of handling her own financial affairs. R. pp. 144-147. As the ALJ noted in his opinion, the Plaintiff's GAF assessment of 55 indicated that she was suffering from only "moderate limitations and symptoms." R. p. 19.

In July, 2003, the Plaintiff was briefly hospitalized at Altoona Hospital. R. pp. 179-186. While in the hospital, her GAF improved from 20 to 61. R. p. 180. It was noted that she had remained "medically stable" during that period of time. R. p. 179. Her attending physician, Dr. Mark Stracks, reported that the Plaintiff had "brightened somewhat" and was "feeling able to smile." R. p. 188.

Finally, the ALJ's residual functional capacity assessment is supported by the findings of a medical consultant, who recorded his findings on April 28, 2003. R. pp. 164-166. The consultant did note that the Plaintiff was markedly limited in her "ability to interact appropriately with the general public." R. p. 165. Nevertheless, in every other category, it was determined that there was either no evidence of limitation, evidence of insignificant limitation, or evidence of moderate limitation. R. pp. 164-166. Consequently, the decision of the Commissioner is supported by substantial evidence for purposes of 42 U.S.C. § 405(g).

In conclusion, this Court has carefully reviewed the hearing transcript. Throughout the hearing, the ALJ asked numerous questions of each of the three witnesses who testified, and there is no evidence that he harbored any hostility toward any of them. R. pp. 193-231. There are, of course, rare instances in which the biased nature of an administrative proceeding is palpable. *Sarchet v. Chater*, 78 F.3d 305, 309 (7th Cir. 1996). Despite the Plaintiff's hints of bias, however, this Court finds no evidence of a malicious motive on the part of the ALJ. R. pp. 193-231; Br. for Plaintiff pp. 13-14. Although he indicated that he did not wish to hear cumulative testimony, the transcript does not reveal the type of

13

impatience asserted by the Plaintiff. Br. for Plaintiff pp. 13-14. The Plaintiff has failed to demonstrate that she was prejudiced by the fact that she appeared *pro se* at the hearing, and there is no evidence that the hearing was unfair. Accordingly, the Court must deny the Plaintiff's Motion for Summary Judgment (Document No. 7) and grant the Commissioner's Motion for Summary Judgment (Document No. 8).

An appropriate order follows.

**AND NOW**, this 16th day of June, 2006, this matter coming before the Court on the parties' cross-motions for summary judgment, IT IS HEREBY ORDERED THAT: 1) the Plaintiff's Motion for Summary Judgment (Document No. 7) is DENIED; and 2) the Defendant's Motion for Summary Judgment (Document No. 8) is GRANTED.

BY THE COURT:

**KIM R. GIBSON,**
**UNITED STATES DISTRICT JUDGE**

cc:  Karl E. Osterhout, Esq.
John J. Valkovci, Jr., AUSA